# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 411 | **DATE** | 6/4/2001 |
| **CASE TITLE** | USA vs. Elizabeth Roach | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The Court has determined to issue its oral ruling on defendant's motion for downward departure as a written memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR6 | courtroom deputy's initials | FILED FOR DOCKETING 01 JUN -5 PM 5:01 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Case No. 00 CR 411 |
| | ) |
| ELIZABETH ROACH | ) |

## MEMORANDUM OPINION AND ORDER

DOCKETED
JUN 0 6 2001

MATTHEW F. KENNELLY, District Judge:

Defendant Elizabeth Roach pled guilty to a single count of wire fraud in violation of 18 U.S.C. §1343. The offense involved her submission of false expense reports to her employer, Andersen Consulting. She has moved for a downward departure pursuant to Sentencing Guideline §5K2.13 on the grounds that she committed the offense while suffering from a significantly reduced mental capacity. For the reasons stated below, the Court grants defendant's motion.

### Facts

Ms. Roach is 47 years old and has both a bachelor's and a master's degree. She has been gainfully employed throughout her adult life in a succession of jobs that has earned her ever-increasing salaries. Prior to her employment by Andersen Consulting, there is no indication that she defrauded any of her employers. Her only criminal history is for a February 1999 shoplifting charge to which she pled guilty and was sentenced to probation.

Ms. Roach was hired by Andersen Consulting in April 1996 as an "experienced manager" and was promoted to associate partner in August 1998, earning a salary of $150,000. In the summer of 1996, she began to submit false and inflated expense reports and obtained from



Andersen reimbursements to which she was not entitled. The falsifications took several different forms. She padded her expenses in approximately 160 instances, obtaining just over $19,000 to which she was not entitled. On 102 occasions, she submitted expense reports for reimbursement of air fares that had actually been billed directly to Andersen, and in this way she obtained around $89,000. On twenty-five occasions, Ms. Roach requested reimbursement for conferences that she had registered for but had not attended, for a total of over $115,000. On thirteen occasions, she submitted expense reports for expenses that Andersen had already reimbursed, for a total just short of $16,000. And on three occasions, Ms. Roach sought and obtained reimbursement for personal expenses which she falsely labeled as business expenses, totaling just over $1,200. It does not appear to the Court that each of these 323 incidents of false reporting represents a separate expense report; though it is not entirely clear, it appears that they represent false line items on a somewhat smaller number of reports, though the exact amount is not clear to the Court. The total amount that she obtained from Andersen by fraud over the three years from April 1996 through April 1999 is $241,061.

Ms. Roach has suffered from chronic severe depression for most of her life. She has credibly reported that she was sexually molested by a relative during her adolescence and that during those same years she suffered from bulimia. At various times, she has experienced suicidal urges and has burned herself with cigarettes. She has also undergone psychiatric treatment throughout most of her adult life. At the present time, she is engaged in a very intensive program of psychotherapy and medication.

During her years in college, Ms. Roach began to shop compulsively as a means of relieving her depression. This manifestation of her psychiatric disorder has continued throughout

her adult life. Her psychiatric treatment has not, at least until recently, resulted in the discontinuance of this behavior, even though her psychotherapists have all been aware of it and have attempted to treat it. Ms. Roach engages in shopping binges which leave her with large debts that she has to repay. Nearly all of the debts have been for clothing and jewelry. One example is a situation in which Ms. Roach entered a store, obtained a credit card as one can easily do at most major department stores, and then charged $10,000 in clothing that same day.

When Ms. Roach and her husband moved to Chicago in 1996, she owed around $60,000 in credit card debt from the purchase of clothing and jewelry. Though she had undergone psychotherapy in Richmond, Virginia before moving, she did not seek therapy upon moving to Chicago but rather was prescribed medication by a general practitioner. This doctor urged Ms. Roach to re-enter psychotherapy, but she did not do so until after a significant shopping binge that took place on a trip to London that was so serious it prevented her from making her return flight. Upon her return to Chicago, Ms. Roach's husband insisted that she enter psychotherapy, and she did so.

According to Dr. Robert Galatzer-Levy, a psychiatrist who evaluated Ms. Roach at the request of the defense, compulsive shopping is one of several ways that persons suffering from severe depression attempt to relieve the effects of their depression. Other such "self-medicating" activity of this type can include alcohol consumption, compulsive eating, gambling, or sexual activity. Some researchers believe that this type of behavior temporarily increases the person's available level of serotonin, a neurotransmitter that, among other things, determines the extent and severity of depression, and thus provides temporary relief from the person's symptoms. During this activity, the person is in a dissociative state in which information that ordinarily

3

would influence the person's behavior does not do so. In short, the types of concerns that would prevent most people from engaging in such activity, such as recognition of the financial implications, disapproval of family members, or simple common sense, are simply not at work.

The evidence reflects that Ms. Roach has, throughout her adult life, taken steps to facilitate and to conceal her compulsive shopping binges. When they were first married, she would pay for groceries with a check, writing it for $50 to $60 over the purchase amount in order to pay for her shopping binges, but would not accurately record this in the checkbook. There were occasions when Mr. Roach, after discovering what had occurred, took steps to prevent Ms. Roach from using the checkbook or credit cards. This would not stop Ms. Roach. She would apply for and obtain new credit cards, engage in further shopping binges, and have the bills sent to her office or to friends' houses, so that her husband would not see them and would not find out about them. And despite the fact that she and her husband were earning over $300,000 per year, she would borrow money from relatives to pay her credit card bills. Though none of this facilitating and concealing activity was illegal, it was nonetheless underhanded, in the sense that it was done largely in an effort to conceal from her husband and perhaps others what she was doing. Just as Ms. Roach could not control her compulsion to shop as a means of self-medication, she was not able fully to control the things she did in order to allow her to continue to carry out that compulsion.

The funds that Ms. Roach obtained by fraud from Andersen Consulting were used to pay debts that she incurred in her shopping binges. Her fraud, besides victimizing her employer, accomplished two things: it allowed her to conceal her shopping binges from her husband and others, and it enabled her to continue to engage in that activity. In short, her offense was both

4

motivated by, and caused by, her impaired mental condition. She realized that what she was doing was wrong, but her judgment and her ability to control what she was doing was impaired by her need to engage in behavior that concealed and facilitated her compulsive shopping binges.

Guideline §5K2.13 provides that

> [a] sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

This Guideline, since its amendment in November 1998, permits a departure for what the court in *United States v. Sadolsky*, 234 F.3d 938, 942 (6th Cir. 2000), refers to as "volitional" impairments – those involving an inability to control one's behavior – just as it permits a departure for cognitive impairments – those involving an inability to understand the wrongfulness of one's actions. *See also* U.S.S.G. App. C, amendment 583 (1998). That is what the evidence in this case shows.

The evidence is for all practical purposes undisputed that Ms. Roach's psychiatric condition had a causal connection with her criminal conduct in this case. Dr. Jeffrey Roth, one of Ms. Roach's treating psychiatrists, opines that it is one of the diagnostic criteria of disorders of this type that a person suffering from the disorder "can desperately commit illegal acts such as forgery or theft to finance their illness and hide their debt from family and others." Dr. Galatzer-Levy states that Ms. Roach had a significantly impaired ability "to control behavior that she knew

5

to be wrong." And Dr. Paul Pasulka, a psychiatrist who evaluated Ms. Roach at the request of government counsel, concluded exactly the same thing: that Ms. Roach suffered from a diminished capacity "such that she could not fully control the behavior that she knew was wrongful."

The government argues that §5K2.13, even after its amendment, requires that the defendant be unable to control the behavior that *constitutes* the crime – in this case the falsification of expense reports – and not just the behavior that *motivates* the crime – the shopping binges. The Court agrees with the Sixth Circuit in *Sadolsky* that this is an artificial distinction not supported by the language or history of the Guideline. And the fact of the matter is that it is often difficult to draw a clear line between what *motivates* a defendant to commit a crime and what *causes* the crime: motivation is a form of causation. In this case, it can scarcely be disputed – and as noted earlier the evidence is *un*disputed – that Ms. Roach's psychiatric disorder was the driving force behind her crime.

In one of its more recent discussions of Guideline §5K2.13, the Seventh Circuit, though not directly addressing the issue presented in this case, adopted a view of §5K2.13's causation requirement similar to that of the Sixth Circuit in *Sadolsky*. In *United States v. Dyer*, 216 F.3d 568 (7th Cir. 2000), a case in which the court affirmed the denial of a departure, the Seventh Circuit stopped short of requiring "but-for" causation as a prerequisite to a departure. Though it stated that "there has to be some causal connection between the defendant's mental condition and his criminal conduct in order to warrant a punishment discount," it went on to say that "judicial reluctance to acknowledge a but-for requirement in section 5K2.13 is a fact, and it is a fact that, we think, reflects the uncertainty that plagues efforts to determine the causal effect of mental

6

disease." *Id.* at 571. What a court is required to determine, under *Dyer,* is that "had it not been for the defendant's mental illness, he would not have committed the crime (or perhaps would have committed a lesser crime)." *Id.* at 570-71.

That is the case here. As the Court has indicated, the evidence is undisputed that Ms. Roach would not have committed her crime had it not been for her psychiatric condition. Her offense was part and parcel of her compulsive behavior. Even though she knew that what she was doing was wrong, as a result of her condition she was not able fully to control her efforts to conceal and facilitate her shopping binges. It is no answer to this to say, as does the government, that she must have been able to control her behavior because she has no criminal history and was not constantly engaging in unlawful conduct. That argument really proves too much, for it would defeat *any* use of §5K2.13 for volitional impairments and thus would frustrate the intent of the Sentencing Commission when it amended the Guideline in 1998. And, as previously stated, the fact is that Ms. Roach has consistently engaged in activity that was underhanded in one form or another (mostly in the sense of trying to conceal her activities from her husband) in order to facilitate and conceal her shopping binges. In short, her history shows that she has been unable fully to control not just the shopping binges themselves, but also the activity that surrounds those binges.

In sum, Ms. Roach suffered from a serious mental condition. In order to ameliorate her depression – put another way, in an effort to self-medicate – she engaged in compulsive behavior, namely shopping binges. She was not in any real way able to control that behavior. This led to an equally compelling need for Ms. Roach to engage in activity that would permit her to conceal her compulsive activity from others, particularly her husband, and to enable her to

7

continue to engage in that activity. The fraud that she committed in this case was both motivated and caused by her mental impairment.

In the words of Guidelines §5K2.13 and its application notes, Ms. Roach committed the offense while suffering from a significantly reduced mental capacity, in that she had a significantly impaired ability to control behavior that she knew was wrongful. Her significant mental capacity was in no way caused by the use of drugs or other intoxicants. The offense in this case did not involve violence or a threat of violence. Finally, Ms. Roach's criminal history does not indicate a need to incarcerate her in order to protect the public. There is some risk that she might, as a result of her condition, break the law, as she did in 1999 when she was arrested and convicted for shoplifting, but the risk of this is minimized to a significant extent by her ongoing psychiatric treatment. In addition, her current employer is closely monitoring her expense reports, which ought to prevent any recurrence of the type of unlawful behavior that led to this prosecution.

## Conclusion

The Court finds that the defendant has established the predicate for a downward departure pursuant to Guideline §5K2.13, and accordingly the Court grants the motion for a downward departure.

MATTHEW F. KENNELLY
United States District Judge

Date: June 4, 2001

8