# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Case No. 00 CR 411 |
| | ) | |
| ELIZABETH ROACH | | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Elizabeth Roach pled guilty to a charge of wire fraud arising from her knowing submission of fraudulent expense reports to her employer, Andersen Consulting. Under the Sentencing Guidelines, her criminal history category was I and her offense level was 13, yielding a sentencing range of 12 to 18 months imprisonment. In June 2001, the Court granted Ms. Roach's motion for a downward departure under U.S.S.G. § 5K2.13 on the ground she had committed the offense while suffering from a significantly reduced mental capacity. *United States v. Roach*, No. 00 CR 411, 2001 WL 664438 (N.D. Ill. June 4, 2001). The Court imposed a sentence of five years' probation, with conditions of six weeks of community confinement ("work release"), and six months of home confinement with electronic monitoring on weekends, in addition to restitution of $241,061 and a $30,000 fine.

The Seventh Circuit reversed. *United States v. Roach*, 296 F.3d 565 (7th Cir. 2002). The court noted that although Ms. Roach's circumstances "suggest[ed] a basis for leniency," the Sentencing Guidelines "significantly limit a district court's ability to fashion a sentence based on such considerations." *Id.* at 573. The court held that Ms. Roach had failed to establish that she had a significantly impaired capacity to control her conduct at the time of the offense and thus

was not entitled to a departure under § 5K2.13. *Id.* at 572-73. Ms. Roach's petition for *certiorari* was denied.

On remand, the Court rejected Ms. Roach's attempt to supplement the record regarding her capacity at the time of the offense, holding this was foreclosed by the Seventh Circuit's ruling and the scope of the remand. *United States v. Roach,* No. 00 CR 411, 2003 WL 21183997 (N.D. Ill. May 20, 2003). The Court imposed a prison sentence of one year and one day, which was at the low end of the Guideline range. On appeal, the Seventh Circuit affirmed, rejecting Ms. Roach's argument that this Court had erred in declining to reopen the record. *United States v. Roach,* 372 F.3d 907 (7th Cir. 2004).

While Ms. Roach's petition for *certiorari* was pending before the Supreme Court, that Court held in *United States v. Booker,* 125 S.Ct. 738 (2005), that mandatory application of the Sentencing Guidelines violated the Sixth Amendment rights of criminal defendants, and thus declared that the Guidelines could not longer be applied in mandatory fashion. Henceforth, the Court ruled, judges were to impose sentence pursuant to the requirements of 18 U.S.C. § 3553(a), which require consideration of the applicable Guideline range and the Sentencing Commission's policy statements, but also require consideration of additional factors. Ms. Roach's case was remanded to the Seventh Circuit for reconsideration in light of *Booker.*

The Seventh Circuit remanded Ms. Roach's case to this Court. Its remand order described the sentence this Court had originally imposed, briefly reviewed the procedural history, and stated: "After *Booker* and *United States v. Paladino,* 401 F.3d 471 (7th Cir. 2005), we now understand that the district court should have been free to fashion the very sentence it intended to impose originally." *United States v. Roach,* No. 03-3078, unpublished order (7th Cir. May 9,

2

2005). The Court vacated Ms. Roach's sentence and remanded the case for resentencing.

Following remand, the Court obtained an update of the presentence report and written submissions from the parties. The Court also heard an extended oral presentation on August 18, 2005.

## Discussion

The Supreme Court held in *Booker* that mandatory application of the Sentencing Guidelines violated the Sixth Amendment, and as a result it invalidated the statutory enactments that made the Guidelines mandatory. Following *Booker*, courts are to determine sentences pursuant to the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) directs a court to impose a sentence that is sufficient, but not greater than necessary, to comply with certain statutory purposes, including the need for the sentence to reflect the seriousness of the crime; promote respect for the law; provide just punishment; afford adequate deterrence; protect the public from further crimes by the defendant; and provide the defendant with needed training, medical care, or correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). In considering the particular sentence to be imposed, a court is to consider those same factors, as well as the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the sentencing range under the Sentencing Guidelines; any pertinent policy statements by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and the need to provide restitution to victims of the crime. *Id.* § 3553(a)(1) - (7).

The Court has conducted the analysis required under § 3553(a) and has considered each of the statutory factors in determining Ms. Roach's sentence. We summarize our reasoning

below.

The parties agree that the Sentencing Guidelines call for a prison term of between twelve and eighteen months, although, under *Booker,* the Guideline range is not mandatory but rather is a factor to be considered along with the other factors in § 3553(a). As the Seventh Circuit previously ruled, the Sentencing Guidelines' policy statements – primarily the policy statements regarding the appropriate grounds for departures, including § 5K2.13 – do not counsel in favor of a sentence outside the Guideline range.

Ms. Roach's crime was a very serious one. It required significant planning and involved repeated acts of fraud and abuse of trust over an extended period. This Court previously found that Ms. Roach knew that what she was doing was wrong, and the Seventh Circuit rejected the contention that she had an impaired ability to control the actions that constituted the offense. If the nature and circumstances of the offense were the only factors to be considered, there is no question that the statutory factors of reflecting the seriousness of the offense, promoting respect for the law, affording adequate deterrence of others, and providing just punishment would call for imposition of a term of imprisonment.

But under § 3553(a), a court is required to consider more than the nature and circumstances of the offense. The parties have devoted most of their time to discussion of Ms. Roach's history and characteristics and how, if at all, they should affect the sentence. The Court takes the following brief summary of Ms. Roach's history of psychiatric disorders and their treatment from the April 2003 report of one of the government's retained experts, Donald Black, M.D., who in turn derived it from his review of Ms. Roach's treatment records:

> The records indicate that Ms. Roach has an extensive psychiatric history

dating to childhood and adolescence, when she was reportedly sexually molested by a relative, and developed an eating disorder. She also has a remote history of deliberate self-harm, for example burning herself with cigarette butts or cutting. She has received some form of psychiatric treatment much of her adult life, including various forms of psychotherapy (talk therapy) as well as psychotropic (psychiatric) medication. Her compulsive shopping behavior began during her college years and the records indicate that it has continued to the present, suggesting that it has been chronic for nearly 30 years. There is no indication of significant remission. She has also had at least one documented incident of shoplifting (in 1999), during which she was apprehended, adjudicated, and given a probationary sentence. Her diagnoses are generally recorded and billed as "depression," "dysthymia," or "depressive disorder not otherwise specified" (note from Northwestern Department of Psychiatry) or chronic major depression (memo of Dr. Galatzer-Levy, November 12, 2002) and "compulsive buying" or "compulsive shopping."

Report of Donald Black, M.D., dated Apr. 28, 2003 (omitting certain citations).

As Ms. Roach's treating psychiatrist has reported, she is a "severely depressed individual[ ]" who has experienced periods of "intense suicidal depression." Report of Arnold Goldberg, M.D. dated Nov. 20, 2000. As Dr. Goldberg has more recently reported, Ms. Roach's "proclivity to engage in excessive shopping was seen to involve an activity that relieved her basic underlying severe depression. This depression dated from early childhood and had never been adequately managed." Report of Dr. Arnold Goldberg, M.D. dated June 17, 2005. Ms. Roach "is a member of a group of severely depressed individuals who handle periods of intense suicidal depression by indulging in various acts of misbehavior such as unnecessary shopping, shop-lifting, lying, sexual perversions, or the use of drugs." Report of Arnold Goldberg, M.D. dated Nov. 20, 2000.

Dr. Black rejected as "speculative" what he termed "[t]he allegation that Ms. Roach's compulsive shopping is a way to cope with her depression." *See* Report of Donald Black, M.D. dated Apr. 28, 2003. That conclusion is unsupported by the record in this case. Dr. Black has

never conducted an evaluation of Ms. Roach, nor did the government request that he be permitted to do so. Rather, his opinions are the result of his review of the records and the application of his unquestioned expertise in compulsive behaviors, including compulsive shopping. Though the Court does not ignore Dr. Black's opinions or disregard them entirely, their weight is, in the Court's view, significantly impacted by the absence of any clinical assessment of Ms. Roach. To put it another way, the Court places far more weight on the assessment of Ms. Roach's treating psychiatrist Dr. Goldberg, whose expertise in assessing and treating compulsive disorders is likewise unquestioned, as well as on the assessment of others who have examined Ms. Roach, than it places on the assessment by Dr. Black, which was made entirely on the basis of a cold record.

Ms. Roach's mental disease does not give rise to either a legal defense to her crime or a basis for a departure under U.S.S.G. § 5K2.13, for the reasons previously described in the Seventh Circuit's and this Court's prior decisions. But it does focus the lens through which the Court assesses certain of the factors in § 3553(a). First of all, determination of what constitutes "just punishment for the offense" under § 3553(a)(2)(A) requires consideration of whether Ms. Roach's mental disease constitutes a mitigating factor even if it does not constitute a defense or a basis for a departure under U.S.S.G. § 5K2.13. The idea of "just punishment" as used in § 3553 includes more than simple incapacitation. As the Seventh Circuit recently suggested in *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005), "just punishment" also includes the concept of retribution – which, considered fairly, requires an assessment of the relative culpability of the offender – and may also include the concepts of deterrence and rehabilitation, both of which may depend in part on the offender's personal characteristics.

Second, Ms. Roach's mental disease is part of the "history and characteristics of the defendant" that the law requires the Court to take into account. *See* 18 U.S.C. § 3553(a)(1). And finally, the court must consider whether Ms. Roach's condition has an impact on "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," which Congress had directed a sentencing judge to take into account under § 3553(a)(6). Specifically, Ms. Roach's mental disease may impact whether a disparity between her and others convicted of fraud is "unwarranted."

In short, the fact that Ms. Roach's mental disorder is not a defense to her crime or a basis for a departure under § 5K2.13 does not eliminate the need to determine how it should affect the Court's assessment of Ms. Roach and her offense for purposes of sentencing.

There is, and can be, no dispute that Ms. Roach has suffered from chronic depression for most, if not all, of her adult life. The history of Ms. Roach's depression was summarized succinctly by Dr. Black in the passage from his report quoted earlier. The record also establishes that one of the symptoms of Ms. Roach's depression has been recurring suicidal ideation. Though there is some disagreement among the various experts regarding the severity of Ms. Roach's depression, the consistent view of experts on both sides of the case who have actually examined Ms. Roach is that her depression is both chronic and serious in its dimensions.

There is likewise no legitimate dispute that Ms. Roach suffers from a compulsive shopping disorder. Both of the government's retained experts, Dr. Paul Pasulka in 2001 and Dr. Black in 2003, have so concluded – as have Ms. Roach's treating psychiatrist Dr. Goldberg and the expert she retained in 2001, Dr. Galatzer-Levy. This is not the moral equivalent of the so-called "Twinkie defense" or other excuses that are frequently derided in the media and by

7

conventional wisdom. Rather, it is a recognized psychiatric diagnosis, as each of the government's experts and each of the defendant's experts have confirmed.

It is an established fact in this case that neither Ms. Roach's compulsive shopping, nor her longstanding diagnosis of major depression, prevented her from distinguishing right from wrong or from controlling the conduct that constituted her offense. But there is likewise no question that Ms. Roach's psychiatric disorder lay at the root of the criminal conduct in which she engaged. To put it simply, if Ms. Roach had not suffered from major depression or compulsive shopping disorder, she would not have piled up the debts and expenses that, in her misguided and unlawful way, led her to commit the crime to which she pled guilty.[1]

Ms. Roach's disorders are neither a defense to the crime nor an excuse for committing it. But in the Court's view, the fact that the underlying behavior (compulsive shopping) and its resulting debts and expenses that gave Ms. Roach the impetus to commit her crime arose from a serious mental disorder constitutes a mitigating factor that, in justice and fairness, counsels in favor of viewing her differently than, for example, a defendant who commits an equally serious offense out of greed or venality.

However, there is far more to it than this. As the Court has explained, certain of the § 3553(a) factors call for a retrospective assessment of the impact, if any, of Ms. Roach's mental disorders on her crime. But it is equally, if not more, important to make a current and prospective assessment of Ms. Roach's disorder to determine what impact it has, if any, on the sentence that should be imposed. There is no question that this is required under § 3553(a).

---

[1] Certain of the experts suggest that Ms. Roach feared disclosure of her shopping activity to her husband and thus determined to raise the necessary funds in another way.

8

Determination of the current status of Ms. Roach's disease, and her prognosis, bears on what type of sentence is sufficient, but not greater than necessary, "to protect the public from further crimes of the defendant" under § 3553(a)(2)(C). In addition, Ms. Roach's mental disease has a direct bearing on the Court's statutory obligation to consider the need "to provide the defendant with needed ... medical care ... in the most effective manner" under § 3553(a)(2)(D).

No one – neither the government, the defense, or their respective expert witnesses – has suggested that a prison term is necessary to protect the public from further crimes by Ms. Roach. Indeed, no one suggests that Ms. Roach is likely to commit similar crimes in the future. But if that is so, it is so only because she has received skillful and effective psychiatric care from her current treating psychiatrist, Dr. Arnold Goldberg. The record reflects that Ms. Roach has pursued psychiatric treatment and care, off and on, for a good part of her adult life. But the care she received prior to, and to some extent during, her commission of the offense plainly did not bring under control either her depression or the compulsive shopping disorder that led her to pile up the expenses and debts that she dealt with by defrauding Andersen Consulting. As Dr. Goldberg has stated, "her basic underlying depression ... had never been adequately managed." Report of Arnold Goldberg, M.D. dated June 17, 2005.

As reported by Dr. Goldberg, persons with Ms. Roach's condition "respond somewhat to anti-depressant medications but also need continuing psychotherapy." Report of Arnold Goldberg, M.D. dated Nov. 20, 2000. The government's originally-retained expert, who unlike Dr. Black actually examined Ms. Roach, agreed that it was "clear from the records and on interview that Ms. Roach has appropriately attempted to inhibit her problematic behaviors through psychotherapy and with the use of psychotropic medication" Report of Paul Pasulka,

9

Ph.D. dated Feb. 11, 2001. Dr. Black contends that, to the contrary, "[t]here is simply no evidence that treating one's depression will lessen compulsive shopping behavior or cause it to remit." Report of Donald Black, M.D. dated Apr. 28, 2003. Whether or not that is true as a general rule, the undeniable truth in Ms. Roach's case, established beyond the shadow of a doubt by the record, is that Dr. Goldberg's treatment of Ms. Roach – for depression generally, and for compulsive behavior specifically – *has in fact* caused remission of her compulsive behavior. As Dr. Goldberg has reported, over the course of his treatment, Ms. Roach "has managed to control and refrain from shopping," and "[h]er depression is now adequately handled by the continuing therapy." *Id.*

This does not mean that Ms. Roach is "cured," thus making consideration of her condition immaterial in determining the issues of need to protect the public and the need to provide her with necessary medical care, both of which are purposes which Congress directed courts to consider under § 3553(a). There is abundant support in the record establishing that absent continuing and appropriate psychotherapy, Ms. Roach will be placed at significant risk of a relapse to serious depression, placing her at risk of suicide, as well as resumption of her compulsive behavior. As Dr. Galatzer-Levy reported, "[i]f Mrs. Roach's therapy is interrupted by incarceration she will probably suffer a severe depressive episode and her propensity to engage in compulsive behaviors is likely to rise very significantly. It will be much more difficult for her to resume treatment." Letter of Robert Galatzer-Levy, M.D. dated Apr. 14, 2001. Even without Dr. Galatzer-Levy's statement, the record gives rise to a compelling inference that were Ms. Roach not to have appropriate and continuing psychotherapy, her depressive state would return, risking recurrence of her compulsive behavior.

It is an insufficient answer to this to say, as the government does, that psychotherapy services would also be available to Ms. Roach in prison. It is crystal clear from the record in this case that not just any therapy will "do." Indeed, Ms. Roach received psychotherapy, from psychiatrists and psychologists whose skill the Court has been given no reason to doubt, prior to her commission of the offense – and yet that therapy did nothing to ameliorate or resolve the psychiatric condition that, as the Court has discussed, led to the compulsive shopping that gave rise to the expenses, debts, and behavior that, in turn led, Ms. Roach to defraud her employer. It was only after Ms. Roach began treatment with Dr. Goldberg, with whom she has now had an ongoing therapeutic relationship for six years, that her condition began to ameliorate.

In support of its argument that the Bureau of Prisons can provide Ms. Roach with appropriate therapy, the government relies heavily on a letter from a regional health systems administrator of the United States Bureau of Prisons in arguing that if incarcerated, Ms. Roach would get care that would reasonably approximate what she is now receiving from Dr. Goldberg. *See* Letter of Jason Terris dated July 26, 2005. Indeed, the government's counsel urged repeatedly at the sentencing hearing that the record would not support a contrary conclusion. The Court emphatically disagrees. The Court does not discount the ability of BOP health care personnel. But on the present record, administrator Terris's opinion cannot be given significant weight. First of all, he is not a psychiatrist or psychologist and thus is not in a position to give an opinion that comes anywhere near medical certainty regarding the quality of psychiatric treatment Ms. Roach would receive from the BOP, let alone to compare that treatment to what Ms. Roach now receives. Second, there is no indication that administrator Terris caused Ms. Roach's records (not even "the document prepared by Ms. Roach's psychiatrist," the only record his letter

11

indicates he had) to be reviewed by BOP staff psychiatrists or psychologists. Third, his letter is conclusory, and his comments are unsupported by any documentation or by any history of successful or even adequate treatment by the BOP of persons similarly situated to Ms. Roach.

The Court has no doubt about administrator Terris' good intentions or the good faith of BOP personnel. But the administrator's letter cannot support the weight government counsel seeks to place on it. It comes nowhere near showing, or even suggesting, that BOP personnel could preserve the successes achieved via the course of treatment established by Dr. Goldberg. To the contrary, the government's submission does nothing to remove the Court's serious concern, echoed by Dr. Galatzer-Levy and also suggested by Dr. Goldberg, that significant interruption of Ms. Roach's existing treatment via incarceration could lead to a relapse of her prior history of depression – which the record reflects has at times reached a near-suicidal level – and could cause a significant risk of recurrence of her compulsive behavior following her release.

The Court has also considered the need to provide restitution to victims of the crime. *See* 18 U.S.C. § 3553(a)(7). At present, this is no longer a factor in Ms. Roach's case, as she made prompt restitution of the full $241,061 at or around the time the Court originally imposed sentence in 2001. It is only fair, however, to view Ms. Roach's prompt payment of restitution as a significant mitigating factor that is appropriately considered in determining what sentence to impose. It is true that Ms. Roach, unlike many defendants, had resources that enabled her to pay prompt restitution, and the Court agrees that she should not be treated more favorably simply because she possessed those resources. But it is equally true that there are plenty of defendants who have resources of one kind or another to draw upon – either personally or via family members – but who make no effort to pay restitution, promptly or otherwise. It would unfairly

penalize Ms. Roach not to consider her prompt restitution, along with her acceptance of responsibility, remorse for her commission of the crime, and her personal efforts to avoid repetition of both her compulsive behavior and her criminal acts, in determining the appropriate sentence. All else being equal, *any* defendant's prompt payment of restitution is a significant mitigating factor appropriately considered in imposing sentence.

For all of these reasons, the Court concludes that a sentence of straight incarceration – let alone a sentence of at least twelve months as mandatory application of the Sentencing Guidelines would require – is far greater than necessary to satisfy the purposes of sentencing as set forth in § 3553(a)(2). Indeed, as the Court has discussed, a sentence of straight incarceration would undermine several of the purposes of sentencing set forth by Congress in the statute, including the need to deter the defendant from committing further crimes and the need to provide her with necessary medical care "in the most effective manner," and would disregard the statutory mandate to consider the defendant's history and characteristics.

The Court nonetheless believes that some deprivation of Ms. Roach's liberty is appropriate, albeit in a way that enables her to continue the successful psychiatric treatment that she has received under Dr. Goldberg's care. This is so due to, among other things, the nature and circumstances of Ms. Roach's offense, the need for the sentence to reflect the seriousness of the offense, and the need to promote respect for the law and provide deterrence to others. *See* 18 U.S.C. § 3553(a)(1) & (2)(A) & (B). Because Ms. Roach's condition has changed somewhat – for the better – since the Court originally imposed sentence in 2001, and due to the Court's consideration of the factors stated in § 3553(a) in light of the *Booker* decision, our sentence is not identical to the one originally imposed in 2001.

The Court imposes a sentence of five years probation, with credit for the period of probation Ms. Roach served until her sentence was vacated by the Court of Appeals on May 9, 2005. The conditions of probation will include three months (90 days) of community confinement, otherwise known as "work release," at the Salvation Army Community Confinement Center. The conditions of probation will also include a period of nine months home confinement following service of Ms. Roach's term of work release. The term of home confinement will include permission for Ms. Roach to work and to engage in work-related travel, and also to obtain medical and psychiatric care. The previously imposed conditions requiring Ms. Roach to pursue mental health counseling and treatment and prohibiting her from incurring new credit obligations are reimposed. Ms. Roach will also be required to serve 150 hours of community service over the remainder of her term of probation. The originally-imposed restitution of $241,061 and fine of $30,000 are re-imposed, although these sentencing terms have already been satisfied by Ms. Roach.

This sentence in no way gives rise to an "unwarranted disparit[y] among defendants with similar records who have been found guilty of similar conduct" within the meaning of § 3553(a)(6). The disparity is justified based on the Court's consideration and weighing of the factors set forth in § 3553(a)(6) and thus cannot be considered "unwarranted."

## Conclusion

The Court imposes sentence consistent with the terms set forth in this Memorandum Opinion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 22, 2005

14